Good morning, Your Honors. My name is Dan Hartsfield, and I represent Neiman Marcus, and I'm here to suggest to the Court that the District Court's opinion denying Neiman Marcus's motion to compel arbitration should be reversed because, despite Mr. Bayer's protests, a unilateral implied-in-fact contract existed between Mr. Bayer and Neiman Marcus. The District Court, in this case, erred on two points. First, Mr. Bayer's objections to the arbitration agreement trumped the consent provided by continued employment. Second, the District Court erred by holding that no arbitration agreement existed because Mr. Bayer did not sign the Acknowledgement of Receipt form. I will discuss both of these points in the club, a case that serves as a good backdrop to illustrate where the District Court got off track. In Gorlock, the employer distributed a new employee handbook that contained a separate stand-alone arbitration agreement. And in the Gorlock case, that program specifically required the employees to sign the separate stand-alone agreement. And this singular requirement, the agreement that they sign a separate agreement, really creates the fork in the road between the two scenarios that California law recognizes in terms of enforcing these agreements. The first one is the Gorlock situation, where you have a requirement to sign a separate agreement, a typical bilateral contract that's not enforceable until the agreement is signed by the parties. And the second scenario involves the unilateral promulgation of a policy in the at-will context that is agreed to not by signing a document, but by continuing employment after notice of the policy is provided. Isn't this yet a third scenario? The employee comes in and says, I'm not going to sign it, you can fire me, but I'm not going to agree to the arbitration, and then the employer lets him work. That's right. And so we're not, I don't think, in either, potentially in either branch. Well, actually, Your Honor, I do think that the first instance, Gorlock would be that case, I don't agree, I'm not signing. Gorlock, under the bilateral contract, no agreement is made. Right. Under the unilateral position, I object, I refuse. The acceptance is not by some act of the employee outside of continued employment. That's the employment-at-will doctrine. No, I didn't do what you could have, what was your position? Could you have fired him? Absolutely, we could have fired him. But you didn't fire him. But we didn't fire him. So why isn't that a waiver? What's the purpose of this piece of paper that says you have to affirm this, which gets you a little bit more like Gorlock. He has this form requiring his signature to affirm, which he doesn't sign, right? He did not sign the acknowledgment of receipt. And now, let me say that. All right. This is where I think the district court erred, because it conflated the two scenarios, the bilateral contract and the unilateral contract scenario. Why? The acknowledgment of receipt form was a separate document that simply said, I acknowledge that I received this document, and I understand it. And it also said, I understand that if I continue working, I'm bound by the arbitration policy. So it is. So he said, but the third thing he has is he says, well, look, I'm not going to be bound. And he says it over and over again. And he says, if you fire me, and you don't fire him. So why aren't you waiving that provision by him coming to work under those conditions which he's rejected? Because what you would that I that scenario would suggest that the at-will employee has the right to unilaterally change the terms and conditions imposed by the employer. Well, he doesn't have the right. You hold all the cards. You hold his job. That's correct. So he can't really do anything. He can raise his hand and object. But you just told me that it's all right to fire him. But you don't fire him. So now we're back kind of in a stasis situation. Well, but the employer does not have to fire him. The majority rule is clear. Well, what case says that? Pardon me? What case says that? The hat? Well, if you look at the DGN – let me get this case right. The DGN-Cinto case says this. The DGN-Cinto case discusses the majority rule. And it discusses the case out of Oregon, the Albrant case. And it discusses the Hathaway case. And what those cases say is, is that under the unilateral implied, in fact, contract situation, promulgation, notice to the employee, the employee has two options at that point. The employee can accept the agreement by continued employment or quit. That's it. If the employee does not quit, the employee continues in employment. He accepts it. It is implied as a matter of law, the acceptance. Now, the purpose of that is the objection is discussed specifically in DGN-Carlo. And there's also a case out of the district court in Illinois. And what they say there is that an employee's objections, however vociferous, whatever protest they pose, aren't relevant. Because the employer has the right to establish a new contract, to terminate at the new contract. And the derivative of that right is to impose terms on the employee that are accepted by continued employment, and that the mere fact of his objections are not relevant. Let me change. I have a curiosity on a different point. The agreement carves out an exception for state administrative agencies and federal administrative agencies, right? Where they can file charges. That's correct, Your Honor. Yes. So, in this case, we have the, and specifically listed are EOC and NLRP. So, he files a state claim. I'm sorry, he files a claim with these federal agencies. Yes, sir. And that's, in your view, you agree that that's not covered by the arbitration agreement? It does not preclude filing administrative charges. That's correct. And if you read down into the fine print of the agreement, it says, well, at the termination of the administrative agency, then this agreement kicks in. Right? That's not an unfair construction, yes. Well, my question to you is one of operation, because let's assume that the employee wins at the administrative law stage, and then there's an enforcement action taken in court. Is it your view, then, that that action is subject to arbitration? Well, what I would say, for example, let's be specific. If we're talking about an EEOC charge, discrimination complaint, where all that's done is the issuance of a notice of right to sue so that the employee can sue. No, that's not my question, because that provides, specifically, so you get a right to sue, then it's subject. But let's say the employee wins at the administrative level, and then you want to appeal, or the agency takes a position of enforcing it. Under the terms of the agreement, it seemed to me that you then had claimed the right to arbitrate that, even though you subjected yourself to the administrative process. Is my construction correct or not? Well, yeah, I'm not sure I – without knowing specifically what sort of administrative procedure you're talking about, clearly that wouldn't apply to an EEOC-type procedure. It wouldn't apply to – Even if you appeal the agency ruling? Well, you can't really appeal a notice of – the issuance of a notice of right to sue. I'm not talking about a right to sue letter. Right. And so what you have is the discrimination complaint, which wouldn't involve an administrative determination of the claim. Wage and hour wouldn't be. NLRB might possibly, but then you couldn't take that to court. So I'm not sure that I specifically see the scenario. Well, let me just close by emphasizing what I see as the fundamental problem with the sweep of the district court's ruling, because while this appears to be maybe just a minor case dealing with a narrow issue about an arbitration agreement involving a cosmetic salesman in San Francisco, it's not. The impact of this ruling is, frankly, somewhat sweeping. And it undermines two things, the employment at will doctrine, and it undermines the whole employment at will situation. There's not a case that I have found anywhere in the United States that supports the position that Mr. Baer has articulated, either at the district court level or here, that an employee can articulate an objection in the at will context to a unilateral contract and thereby preclude the consent implied by law that's established by continued employment. If we agreed that it was a contract, then do we send it back and let the judge still have the ability to determine whether it's unconscionable? I do think that that was an issue that was not decided by the district court. So I do think that it would probably, at the end of the day, not be proper for the court here to rule on an issue that the district court didn't rule on. So I do think that. So what does this leave us? I mean, I think this leaves us that if this decision is upheld, employers in California are deprived of the right to use unilateral changes in terms. I mean, this does not just apply to arbitration agreements. Concepcion makes that clear. We can't have a separate set of rules for arbitration agreements and a separate set of rules for other policies. What if an employer issued a policy that says I'm going to change your compensation to an at will employee? And the employee says no. I don't agree to that. Therefore, it doesn't apply. And they can say no. Well, the answer to those questions vary from State to State. So it's not when you're getting the parade of horribles here, I think you're probably losing sight of what we have. Right. And your time has expired. We will give you a couple minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Cliff Pilevsky for Mr. Baer. Your questions were exactly right. First of all, there is no doctrine of contract law, never has been, that allows you to find a contract when someone says I don't agree three times, writes I don't agree twice, refuses to sign acknowledgment forms saying I don't agree, and then files charges with the two Federal agencies. Then how do you distinguish di ciento? That's the employee. Well, there's several ways to distinguish it. First, the employee in that case never said I refuse to accept it or I don't accept it. He asked whether it could be changed. And there's a reason. Does your whole case rely on the fact that he made affirmative objections? Well, not the entire case, because the agreement is totally unenforceable and unconscionable. But as to the contract law, it absolutely relies on the fact that he said no repeatedly, that as the Gorlock case, the Gorlock case, as the Court pointed out, is very important here. Well, what do you do, then, with the different California cases? Each one is one degree off the other. What about the Clark case, which basically suggests that if you accept continued employment, that that is acceptance of arbitration? So you could object here, but as long as you stay on over here under Clark, you now have formed a contract because you accept it. Let me answer it in two ways. First, the notion of implied contract, in the hierarchy of contracts, we have an express contract, we have an oral contract, and then you have an implied contract. As Gorlock says, an implied in fact contract exists when there's a mutual agreement and intent to promise where the agreement and promise have not been expressed in words. You cannot have an implied contract that is inconsistent with a written contract or an express contract. And there's a host of California cases --- To answer my question with respect to Clark? Well, that's an implied contract, Your Honor. So what I'm trying to say is that when someone says, I do not accept, Justice Thomas's question is right. They can say, we accept your resignation, or you are fired. That, in fact, in the chronology of it, if he says, I don't accept it, their choice is to allow him to continue working under the terms that he's offering his services or to terminate him. That an arbitration agreement is not setting the terms of employment or compensation. This is the waiver of constitutional rights. The FAA says there's a written agreement. The United States Supreme Court has said repeatedly arbitration is a matter of consent and not coercion. The ADA itself, which is the claim he had pending, has a unique provision in it that makes it unlawful to coerce, intimidate, or threaten someone out of the exercise of rights that the company clearly allowed him to come to work and accepted his offer to continue working. And keep in mind this --- Well, you know, you can carry this out to kind of an odd extreme because so he says, I don't agree to this, and they allow him to come to work. And then the counter is, all right. He didn't protest the next day, and so when he came to work, he accepted the terms. Well, they never said to him, we're deeming you're coming to work as an acceptance. And, in fact, he continued to object. No, I said that in the contract, basically. No, actually, what the contract said is if you're here on the 19th, you are deemed. And I don't think that you can deem something in the face of an express statement that I do not accept. We have the Goose case. This is a California contract law case. There's any number of cases, starting with Goose v. Bechtel from the California Supreme Court, that say you can't have an implied contract that contradicts the terms of a written contract. Whether or not there is an implied contract is a question of fact. And the district court here examined each of the acknowledgement forms, each of the statements, and made a finding of fact, which really shouldn't be subject to appeal here on some legal basis. But isn't your whole argument dependent upon us determining that it is a bilateral contract, that if we determine it's unilateral, that the offer is there and the employee can continue to work or not? If it's unilateral, then your argument doesn't work with the case law in California, right? You know, Your Honor, I don't think that's right, because even in a unilateral or implied contract, Gorlach makes it very clear. At its essence, there still needs to be an agreement, that the performance needs to exhibit an intent to agree. And that's in the Gorlach – that's right out of the Gorlach case. So I don't – it doesn't really matter if you call it a unilateral contract or a bilateral contract, if someone says, I do not agree. If someone writes down, I do not agree, there is not a contract. And I don't think – He's an at-will State, right? California is an at-will State, which means they have the right to say to him, if you don't accept the terms, you're not working here. Go home. And so the law is, it doesn't matter if he complains, objects, expresses disagreement with the new offer, as long as he continues employment in an at-will environment, he is accepting the contract. I don't think that's the – I don't think that's the law, Your Honor. That's not the law in certain – in Gorlach. She continued working. In Meetry, they continued working. I don't think there's a – there's a California case that has someone saying, no, I don't agree, three times, orally and in writing, that found an agreement. Whether – it doesn't matter what – The upshot of it is when they make – let's say they make a mid-career, you know, mid-employment decision that affects all employees, and they want you to affirm, as they did here, the terms of that, and people don't affirm. So you're basically saying then they do have to do a mass termination. I think that if they say, here's – No. Answer the question. Would they then have to do a mass termination if they – unless they wanted to – They would have to terminate. Basically waive – they would then waive the arbitration agreement. That's right. They either waive that requirement, say, well, it's not really a condition of employment, or they have to terminate or accept the resignation of anyone who doesn't agree. That's what contract law is. Here's the contract. You either agree, and he says, I don't agree. And keep in mind, he said, I don't agree, two or three times before the date set, that it becomes deemed as an acceptance. So there is no way in the real world that him showing up at work or not quitting and giving up his health insurance could be construed as an acceptance or an agreement. And the Gorlach case, which the Court pointed out, makes it clear this is a question of fact, and there has to be an intent to express agreement in your performance. And we have the exact opposite here. I really think that it's a distraction to consider this a unilateral contract, because we're talking about not his employment contract so much as the waiver of constitutional rights, the waiver of statutory rights. And there are – That's – you're losing me on that one. I hear your argument, but it's not making a lot of sense. Basically, you have this acknowledgement form that says it's mandatory, it's effective as of a certain date, and it's for anybody who continued to work at Neiman Marcus. And he said no. And he says, I don't agree, and I'm not signing that. That's exactly right. Right. But then he continues to be employed at Neiman Marcus, and they basically say that it's going to be effective in any event for anybody who is here after such and such a date. Why isn't that the unilateral contract that you're trying to back away from? The chronology is important. They say, if you show up, we will deem it as an acceptance. After that and before the date set, he said, no, I don't accept it. I do not accept my showing up at work or continuing to work as an acceptance. At that point, Judge Thomas is right. They either say, we accept your revised offer of your services without the arbitration agreement, or they accept his resignation, or they terminate him. If you're just going by who said what and then who acted next, clearly he expressed no three times, and they allowed him to continue working. They could have said, go home. They could have said, you don't work here anymore. They accepted his offer. And he could have said, I quit, right? I'm not going to work under those conditions. I quit, right? He said, I'm not going to work under those conditions, and if you don't If you want me to work, I'll work. If you don't want me to work, then you said you're going to terminate me. They told him, if you don't accept this, we're going to terminate you. And they never did. That's a waiver. That's an estoppel. They knew what they were doing. They knew that it would have been illegal to fire him. They knew that they would expose themselves to liability to fire him. They made a decision not to fire him. So it really wasn't a condition of employment. They said it to try to coerce people, but in fact, it turned out not to be a condition of employment because they allowed him to continue working. They accepted the benefit of his skills and sales skills under the terms that he proposed, whether you call it a counterproposal or a counteroffer. They're the one who acted last. So under even an implied theory, a unilateral contract theory, there is no agreement to arbitrate. Regardless of any other agreement regarding the terms and conditions of his employment, there cannot be an agreement to arbitrate when the FAA says it needs to be in writing and he says no every way a human being can say no. Thank you, Counsel. Thank you. We'll give you two minutes for rebuttal. I just want to sort of illustrate the logic of the position taken by Mr. Bair. If we recognize that there is in fact a doctrine that says, that recognizes unilateral implied in fact contracts based on notice and continued employment, if the employer is in the position of, if the employee objects, they must fire the employee or if they continue to employ him, lose the opportunity to enforce. That destroys that contract doctrine because if you have to fire him, that prevents ever satisfying factor two, continued employment. Employers have not to fire them. They can't fire them. If they fire them, they don't have the contract. Now, two is, in the D. Giancinto case, the employee objected. The employee refused to sign the document. That's why the court addressed the issue and held under this approach, it would not be legally relevant if the employee also had complained, objected, or expressed disagreement with the new offer, as long as the employee continued in employment with notice of the new terms. The Schoepert case, the court says there that Schoepert's continuing to work must have been seen in legal terms as an acceptance of the modification, grudging and protest-filled as that acceptance may have been. Now, the purpose of the acknowledgment form is singular and only one thing, and its sole purpose is to satisfy the first prong of the unilateral contract test, notice. We've got to show two things, notice and continued employment. The acknowledgment of receipt form is meant to establish that prong, because if the employee signs, I acknowledge I have received the arbitration agreement, the employer has established notice, and we avoid the situation that we have in Brown and Root, where the company mailed the arbitration agreement to the employees, and then the employees said, oops, I didn't get it. Therefore, you can't satisfy notice. Therefore, I'm not bound to arbitrate. So, if we eliminate this opportunity to have acknowledgment of receipt forms to satisfy notice, what that's going to lead to is litigation in the courts about did I or did I not have notice. Thank you very much. Thank you. The case will be submitted for decision. Thank you both for your arguments.
judges: Kendall, Thomas, McKeown